**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Criminal Action No. |
| v. | 1:18-cr-54-RWS |
| CHRISTOPHER HEARST (1), CEDVONTE´ HENRY (2), and JORDAN DUKES (4), | |
| Defendants. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Criminal Action No. |
| v. | 1:19-cr-414-RWS |
| JORDAN DUKES (1), | |
| Defendant. | |

## **<u>ORDER</u>**

This matter is before the Court on the March 11, 2022 Report and

Recommendation ("R&R") of former Chief U.S. Magistrate Judge Alan J.

Baverman, now retired, and timely written objections from Defendants Christopher

Hearst and Jordan Dukes, who is a defendant in both of the above-referenced criminal actions.[1]

Judge Baverman recommends that Defendant Hearst's Motion to Dismiss Counts Two, Four, Six, and Eight [Dkts. 52, 62] be denied and that his Motions to Suppress [Dkts. 46, 47, 49, 59, 60, 70, 137] and Motion to Sever Defendant and Exclude Out-of-Court Statement of Co-Defendant [Dkt. 51] be denied. Judge Baverman also recommends that Defendant Dukes' Motions to Suppress [Dkt. 146-148] be denied.

## LEGAL STANDARD

In reviewing a Report and Recommendation ("R&R"), the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §

---

[1] The R&R is Dkt. 237 in Criminal No. 1:18-cv-54-RWS ("2018 case") and Dkt. 29 in Criminal No. 1:19-cr-414-RWS ("2019 case"). For simplicity's sake, when referring to document numbers, the Court will refer to the docket numbers within the 2018 case.

In the 2018 case, co-defendant Cedvonte´ Henry did not file objections to the R&R, and co-defendant D'Brianne McMillan (3) pled guilty and has already been sentenced on May 17, 2021.

After Dukes' second indictment in 2019 charging a separate, subsequent robbery, Dukes moved for his pleadings in the 2018 case to be adopted in the 2019 case [2019 Case, Dkt. 10].

636(b)(1).  "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted).  Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record" in order to accept the recommendation.  Fed. R. Civ. P. 72, advisory committee note, 1983 Edition, Subdivision (b).  In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Plaintiff objects and has reviewed the remainder of the R&R for plain error.  See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## DISCUSSION

As an initial matter, the Court notes that the legal arguments raised by Defendants in their objections to the R&R are duplicative of the arguments made before Judge Baverman. All issues have been thoroughly analyzed by the

Magistrate Judge.  Nonetheless, the Court has conducted a *de novo* review and enters the following Order overruling Defendants' objections.

### I.    Christopher Hearst's Objections, as Amended [Dkt. 262], are Overruled

As an initial matter, Hearst objects to a number of "factual findings" that support Judge Baverman's legal conclusions.  Rather than discuss each finding Hearst seeks to attack, many of which are issues of credibility and/or proper fodder for cross-examination, the Court will discuss the material facts within the context of the decision at issue.

### A.  The Magistrate Judge Properly Determined that Historical Cell-Cite Information is within the Scope of Information the Government is Authorized to Obtain pursuant to 18 U.S.C. § 2703(d) [Dkts. 46, 60]

Title 18, United States Code, Section 2703 of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq*., permits an electronic service provider "to disclose [to a government entity] a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)" where properly supported.  § 2703(c).

This Court previously denied motions to suppress filed by Defendants Hearst and Cedvonte' Henry on the grounds that the governing law in the Eleventh Circuit at the time law enforcement obtained the information did not require search

warrants to obtain historical cell-site data.[2] [Dkt. 76]. The basis for the ruling was that good faith saved the cell-site data from suppression notwithstanding the absence of a search warrant. Although the earlier decision preceded Carpenter v. United States, 138 S. Ct. 2206 (2018),[3] which now requires a warrant, it is the law of the case that law enforcement acted with good faith reliance upon the then-governing legal authorities holding that no reasonable expectation of privacy existed as to cell-site data. See United States v. Robinson, 690 F.2d 869, 872 (11th Cir. 1982) (detailing law of the case doctrine and exceptions). The motions were subsequently referred back to Judge Baverman to consider the other issues raised by Defendants in their motions.

Defendant Hearst contends that the historical cell-site information obtained by law enforcement in this case is beyond the scope of information for which a § 2703(d) order may be issued. Every court that has addressed this issue has concluded that cell-site data is included within "a record or other information pertaining to a subscriber to or customer of such service" properly obtained under § 2703(d).

---

[2] Defendant Henry has not filed objections to the R&R.

[3] Prior to Carpenter, law enforcement requests for this information were authorized by court order as opposed to a search warrant.

This objection is overruled.

## B. The Magistrate Judge Properly Recommended Denying Hearst's Motions to Suppress Evidence [Dkts. 47, 59, 70]

### 1. Bags and Guns Seized from Hearst's Room at the Efficiency Lodge

Bags and a gun that Henry retrieved from Hearst's room at the Efficiency Lodge (Room 133) were searched pursuant to a search warrant. Hearst argues that the search warrant for the bags was invalid because the affidavit submitted in support of the warrant omitted material information (i.e., Henry told the agents that "Savage" was known to him as "Devante Hugh"). Hearst challenges the veracity of the information reportedly shared with FBI Special Agent Tim Burke ("Agent Burke") by the property manager, Ms. Soriano ("Soriano").[4]

---

[4] Specifically, Hearst takes issue with Judge Baverman's "factual finding that *during* Agent Burke's conversation with the property manager at approximately 9:00 a.m., the property manager told Agent Burke that a weekly room check needed to be performed, and that if the employees located the persons they were talking about, they would tell him." Hearst states that the property manager was already aware of Hearst's arrest and had previously spoken with Agent Burke. Defendant contends that the property manager's testimony "was not true in this regard." These are matters for cross-examination. Hearst also challenges Judge Baverman's findings that Agent Green entered the hotel room before hotel employees to clear the room, that Agent Greene conducted his search of Hearst's hotel room before mentioning the possibility of a reward to the property manager. Hearst objects on lack of completeness. He contends that the R&R should also include Agent Greene's testimony that Ms. Soriano called him at least 3 or 4 times about the reward.

Judge Baverman correctly found that, even if the alleged misrepresentations were removed from the affidavit for the search warrant, there was still sufficient probable cause for the issuance of the warrant.  He concluded that Hearst was not entitled to a Franks[5] hearing and that the officer did not intentionally or recklessly misrepresent any facts for the warrant.

The objection is overruled.

## 2.  Stop of Mazda, Arrest, & Seizure of Evidence from Mazda

Next, Hearst objects to Judge Baverman's conclusion that the stop of the Mazda vehicle, Hearst's arrest, and the seizure of the items from the Mazda were not tainted by an unlawful search of Room 133 conducted by the property manager. Hearst further objects to Judge Baverman's determination that the evidence seized through searches of the bags in the Mazda was obtained from a source independent of the property manager's entry into Room 133.

Judge Baverman correctly found that, even if the room was unlawfully searched, there was enough independent probable cause to stop the vehicle and arrest Hearst. Then, those facts, when combined with Childs' post-stop statements about retrieving the bags from the room on Hearst's directions, provided enough probable cause to obtain a warrant for the bags found in the Mazda. Even if there

---

[5] Franks v. Delaware, 98 S. Ct. 2674 (1978).

was not sufficient probable cause initially, there was reasonable suspicion to allow the Mazda to be stopped. The reasonable suspicion then ripened into probable cause for Hearst's arrest when his fingerprint was taken and matched the person for whom an outstanding arrest warrant had issued.

This objection is overruled.

### 3. Lawfulness of Entry & Search of Room 133

Hearst lodges several objections related to Judge Baverman's determination that the warrantless intrusions into Hearst's hotel room (Room 133) were not unlawful.[6] For instance, Hearst objects to the finding that the property manager was not an agent of the Government when she entered Room 133 for the purported reason of conducting a property check. He also disagrees with the conclusion that the objective facts supported a conclusion that Hearst had abandoned the room and that the landlord had authority to allow Agent Greene and other law enforcement to enter Room 133 and search without a warrant.

Regarding the question of whether Property Manager Soriano was acting as a government agent when she entered Room 133, this is a close call. However, accepting the finding that the reward was not discussed until after the assistance

---

[6] Hearst challenges the factual finding that all that was left in the room after Hearst's arrest was trash.

was provided, and based on the testimony that entry into the hotel room was a part of the motel's standard operating procedure, the conclusion reached by Judge Baverman is sound.  The same is true concerning Judge Baverman's conclusion that the independent source doctrine bolsters the recommendation.

With respect to Agent Greene's entry into Room 133 with motel staff, Judge Baverman found that the evidence supported a conclusion that the room had been abandoned by Hearst.  The undersigned agrees.  At the time in question, Hearst had been arrested after having someone clear his things out of the room. The policy of the motel was to take possession of a room if it appeared to be abandoned by the tenant. Hearst points out that his girlfriend was also living in the room with him and there is no evidence that she had abandoned the room. Under the circumstances, the entry was lawful.

This objection is overruled.

### C. The Magistrate Judge Properly Recommended Denying Hearst's Motion to Suppress Identification Testimony [Dkts. 49, 137]

Hearst argues that the out-of-court identification process employed with Latoya Subero ("Subero") (Henry's girlfriend) was inherently suggestive. Hearst contends that Judge Baverman erred in determining that he did not meet his burden of demonstrating undue suggestiveness given that Subero acknowledged that she

was relying on a prior statement by Henry and because she was shown a single booking photo of Hearst.[7]

In the R&R, Judge Baverman found that the photo first shown to Subero was a BOLO (or "be on the lookout") photo from the Conyers Family Dollar store robbery. She testified that Henry told her that the robbery photos he saw on the news looked just like "Savage."  In her second interview, Subero again identified the BOLO photograph and also identified a single booking photograph of Hearst that she identified as "Savage."  Judge Baverman applied the two-part test established for determining whether an out-of-court identification can properly be admitted.  See Marden v. Moore, 847 F.2d 1536, 1545 (11th Cir. 1988). First, the court must determine whether the original identification procedure was unduly suggestive.  Id.; and see United States v. Diaz, 248 F.3d 1065, 1102 (11th Cir. 2001).  In this context, "unduly" suggestive refers to circumstances where reliability is undermined, where "the photographic identification procedure was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Perry v. New Hampshire, 132 S. Ct. 716, 724 (citation and internal quotations omitted).  If the identification procedure is not

_____

[7] He argues that, before related evidence (out-of-court identification or testimony from Subero concerning identification) is admitted at trial, the Government should be required to establish reliability.

deemed unduly suggestive, "that ends the inquiry."  Williams v. Weldon, 826 F.2d 1018, 1021 (11th Cir. 1987).

There is no evidence or suggestion that the identification procedure was unduly suggestive. The witness was merely shown a BOLO photograph and identified the person in it. After the initial identification, Henry and Subero made separate, independent identifications. Judge Baverman found no undue suggestiveness in showing Subero a single booking photo and her confirming that the person depicted was the person she previously identified as "Savage.  This Court agrees.

This objection is overruled.

### D. The Magistrate Judge Did Not Err in Recommending Denial of Hearst's Motion to Dismiss Section 924(c) Counts Charged in the Superseding Indictment [Dkts. 52, 62]

In Counts Three, Five, Nine, Eleven, Thirteen, and Fifteen, Hearst is charged with using, carrying, brandishing, or discharging a firearm during and in relation to a crime of violence, namely, Hobbs Act robberies charged in preceding counts (Counts Two, Four, Eight, Ten, Twelve, and Fourteen), in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(ii).  Hearst objects to Judge Baverman's determination that the Hobbs Act robberies qualify as "crime[s] of violence" and predicates for § 924(c) offenses.  Hearst's argument is premised upon United

States v. Davis, 139 S. Ct. 2319 (2019).  In Davis, the Supreme Court held that the

residual clause of the definition of crime of violence within 18 U.S.C. § 924(c),

which provides mandatory minimum sentences for using, carrying, or possessing a

firearm in connection with a federal crime of violence, is unconstitutionally vague

under due process and separation of powers principles.[8]  139 S. Ct. at 2336.

Here, the relevant counts charge *substantive* Hobbs Act robberies – not

conspiracy to commit Hobbs Act robbery or attempted Hobbs Act robbery.[9]  The

Eleventh Circuit has consistently held that a Hobbs Act robbery categorically

---

[8] Prior to Davis, a "crime of violence" was defined, and could be proven, in one of two ways:

> [A]n offense that is a felony and
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another ["elements clause"], or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense ["residual clause"].

Id. at 2324 (quoting § 924(c)(3)).  Physical force encompasses both the "attempted use" or "threatened use" of force.  § 924(c)(1)(A).

[9] See Brown v. United States, 942 F.3d 1069, 1075 (11th Cir. 2019) ("conspiracy to commit Hobbs Act robbery does not qualify as a 'crime of violence,' as defined by § 924(c)(3)(A)"); and see United States v. Taylor, 142 S. Ct. 2015 (2022) (attempted Hobbs Act robbery is not a "crime of violence").

qualifies as a "crime of violence" for purposes of § 924(c).  Therefore, Hearst's motion to dismiss based on <u>Davis</u> is due to be denied.

This objection is overruled.

## II.   Jordan Duke's Objections are Overruled [Dkt. 33, 2019 Case]

### A.  The Magistrate Judge Did Not Err in Recommending Denial of Dukes' Motion to Suppress [Dkt. 146, 147]

#### 1.  Seizure of Dukes' Phone Under the "Plain View Doctrine"

Defendant argues that the phone could not be seized under the plain view doctrine because it was not obvious that the cell phone was evidence of a crime.

The Government asserts that it lawfully seized the phone pursuant to plain view doctrine because the agents were lawfully on the premises to arrest Dukes. The Government also asserts that the officers were aware of the evidentiary value of the phone because Costa had already obtained cell-site information and tower dump information linking Dukes' phone to a number of robberies and had seen a phone in Dukes' possession one week before. The Government also asserts that the phone was within the grab area of Dukes when he was arrested.

The Fourth Amendment to the U.S. Constitution protects the right of persons to be free from unreasonable searches and seizures.  U.S. CONST. AMEND. IV.  "In most circumstances, for a search that is not based on consent to comply with the Fourth Amendment, law enforcement must obtain a warrant supported by probable

cause." United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005). As a general rule, the warrantless search of an individual's home, along with any warrantless seizures occurring inside a home, are "presumptively unreasonable." Payton v. New York, 100 S. Ct. 1371, 1380 (1980) (citation omitted).

The plain view doctrine is an exception to the Fourth Amendment's warrant requirement. Horton v. California, 110 S. Ct. 2301, 2308 (1990). "The plain view doctrine allows police officers to seize any contraband in plain view if the officers have a right of access to the place where the contraband is located." United States v. Rodgers, 924 F.2d 219, 221 (11th Cir. 1991); accord United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006). It is essential "that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Horton, 110 S. Ct. at 2308. In addition, "not only must the item be in plain view; its incriminating character must also be immediately apparent." Id. (citations and internal quotation marks omitted); United States v. Hromada, 49 F.3d 685, 690 n.11 (11th Cir. 1995).

Law enforcement must have probable cause to believe that the object in plain view is contraband. Minnesota v. Dickerson, 113 S. Ct. 2130, 2137 (1993). Probable cause to seize an item in plain view exists whenever the facts available to searching law enforcement officer support a reasonable belief that the item may be

contraband, stolen property, or evidence of a crime. <u>Texas v. Brown</u>, 103 S. Ct. 1535, 1541 (1983).

Here, Judge Baverman found that there was no issue that the officers were on the premises legitimately and that the cell phone was in plain view. Agent Costa possessed an arrest warrant for Dukes and, as long as law enforcement reasonably believed Dukes to be present at his residence, physical intrusion of the home was authorized. The phone was also readily observable by Agent Costa as the phone was laying on the bed in the room where Dukes had just been sleeping -- the same room where Dukes got dressed.

Judge Baverman found that the Government had the better argument as to the lawfulness of the seizure of the phone because there was probable cause to believe that it contained evidence of a crime.[10] Agent Costa knew that the number associated with Dukes' cell phone was in close proximity to the robberies. It was also reasonable to assume that Dukes had not changed phones between October 16 and October 24, 2018.

This objection is overruled.

---

[10] Dukes seeks to distinguish his case from a drug case, where the presence and use of a cell phone to facilitate drug trafficking is common and more probative of criminal activity.

**2. The Government's Derivative Use of the Password to Dukes' Phone to Search the Phone**

The second objection involves the seizure of Dukes' cell phone by Agent Costa without first obtaining a search warrant and Agent Costa's subsequent request for the password, which also occurred before Dukes was read his <u>Miranda</u> rights. Dukes argues that the R&R erred in finding that derivative use of the password to his cellphone did not violate the Fifth Amendment given Duke's voluntary response to Agent Costa's request.

Dukes contends that he was coerced and did not voluntarily supply Agent Costa with the password to his phone or waive his Fifth Amendment rights. Dukes points to the surrounding circumstances, including that a number of armed officers had entered his home and seized him at the threshold of his bedroom where he was lying naked. Law enforcement cuffed Dukes and then dressed him before proceeding to ask pre-<u>Miranda</u> questions.

The Government contends that Dukes' providing his passcode was a voluntary statement and not subject to suppression.

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. AMEND. V. In <u>Miranda v. Arizona</u>, the Supreme Court held that protecting a suspect's Fifth Amendment privilege against self-incrimination requires that an accused be

16

warned prior to "custodial interrogation" that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 86 S. Ct. at 1612 (footnote omitted).  Simply stated, "if the police take a suspect into custody and then ask him questions without informing him of the rights enumerated [in Miranda]. . ., his responses cannot be introduced into evidence to establish his guilt." Berkemer v. McCarty, 104 S. Ct. 3138, 3144 (1984) (citations omitted).

Under Miranda, interrogation may include express questioning or its functional equivalent -- "any words or actions on the part of police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 100 S. Ct. 1682, 1689-90 (1980) (emphasizing that focus should be "primarily upon the perceptions of the suspect, rather than the intent of the police").  Additionally, interrogation contemplates "a measure of compulsion above and beyond that inherent in custody itself." Innis, 100 S. Ct. at 1689.

An "'incriminating response' includes 'any response—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial.'" United States v. Lopez-Garcia, 565 F.3d 1306, 1316-17 (11th Cir. 2009) (quoting Innis, 100 S. Ct. at 1690 n.5 (emphasis in original)).

17

The burden is Defendant's to establish that his statements were made in response to government interrogation.  See United States v. Guerrero–Barajas, 240 F.3d 428, 432 (5th Cir. 2001) (citation omitted).

Miranda safeguards do not render a defendant's unsolicited or spontaneous statements to law enforcement inadmissible.  See Miranda, 86 S. Ct. at 1629 ("Volunteered statements of any kind are not barred by the Fifth Amendment. . . ."); accord United States v. Savell, 546 F.2d 43, 45-46 (5th Cir. 1977) ("Miranda only requires that a recital of the warnings precede interrogation and does not reach a situation . . . where the statements were unsolicited, spontaneous and freely made prior to any attempted interrogation").[11]

As for Dukes providing his passcode, Judge Baverman found that the production of cell phone passwords constitutes incriminating testimony protected by the Fifth Amendment. However, a violation of Miranda does not bar admission of physical evidence that is the fruit of an unwarned, but voluntary statement. Looking at the totality of the circumstances, Judge Baverman found that Dukes' statement providing the passcode to his cell phone was voluntary. He

---

[11] Decisions of the Fifth Circuit that precede October 1, 1981 have been adopted as binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

acknowledged that in an arrest, there is always a degree of duress.  However, he found that the officers used no coercive tactics nor took unlawful advantage of the arrest situation to obtain the consent. He did find that Costa's warrantlessly checking the phone to see if the passcode would unlock it, even if he conducted no further intrusion, was a search. Nonetheless, Dukes is not entitled to any relief for this warrantless intrusion because Costa obtained no information from his actions other than confirmation that the cell phone was capable of being unlocked with this passcode.

Moreover, in his subsequent affidavit in support of the search warrant for the phone, Agent Costa did not mention that Dukes gave him the passcode or that he unlocked it temporarily using the passcode. Therefore, the search of the phone by warrant was not tainted by the earlier opening of the cell phone with the passcode.

This objection is overruled.

### 3. The Magistrate Judge Did Not Err in Recommending Denial of Dukes' Motion to Suppress DNA Results [Dkt. 148]

At the pretrial conference, the Government explained, and Dukes did not challenge, that the DNA was obtained via a search warrant. Dukes did not attack the warrant in his motion.

Dukes asserted at the pretrial conference that the DNA swab violated his Fifth Amendment rights against self-incrimination. The Fifth Amendment is not

implicated by the warranted swab as the evidence obtained is neither testimonial nor communicative. Everett v. Sec'y of Fla. Dep't of Corr., 779 F.3d 1212, 1244 (11th Cir 2015).

This objection is overruled.

## CONCLUSION

In sum, the Court agrees with Judge Baverman's thorough and well-reasoned analysis. Defendants' respective objections are overruled.

Accordingly, it is hereby **ORDERED** that Judge Baverman's R&R [Dkt. 237] is accepted with approval and **ADOPTED** for all purposes. Defendant Hearst's Motions to Dismiss Counts Two, Four, Six, and Eight [Dkts. 52, 62] are **DENIED**; Defendant Hearst's Motions to Suppress [Dkts. 46, 47, 49, 59, 60, 70, 137] are **DENIED**; Defendant Hearst's Motion to Sever Defendant and Exclude Out-of-Court Statement of Co-Defendant [Dkt. 51] is **DENIED**; Defendant Dukes' Motions to Suppress [Dkt. 146-148] are **DENIED**; Defendant Henry's Motions to Suppress Cell Site Data [56, 191] are **DENIED**; Defendant Henry's Motions to Dismiss Counts Four, Six, and Eight [57, 204] are **DENIED**.

This matter will be calendared for Jury Trial by the Courtroom Deputy forthwith.

**SO ORDERED** this 14th day of October, 2022.

_Richard W. Story_

**RICHARD W. STORY**
United States District Judge